UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Craig Faison, | ) | |
| | ) | |
| Mary Faison, | ) | |
| | ) | |
| Ke'osha Avery, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. _____ |
| | ) | COMPLAINT |
| Clinton W. Ratliff, | ) | DAMAGES |
| | ) | JURY TRIAL REQUESTED |
| Walmart Stores East, LP, | ) | |
| and d/b/a Walmart, 7001 Concourse Pkwy, | ) | |
| Douglasville, GA, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMPLAINT

COMES NOW, Plaintiffs, who shows the Court the following:

**Jurisdiction and Venue**

1.     This Court has federal subject matter jurisdiction under 28 U.S.C. §§ 1331

and 1343(a)(3) because this action asserts deprivations of federal constitutional

rights under the First, Fourth, Thirteenth and Fourteenth Amendments taken under

color of law, remediable under 42 U.S.C. §§ 1983 and 1985(3), by providing

compensatory damages for injury caused by the deprivation of federal rights,

1

punitive damages and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) for claims under Georgia law because the facts supporting the state claims arise from the same or similar facts supporting the federal claims, that are substantially from the same case or controversy as the federal claims brought under Article III jurisdiction.

3.     Because the challenged incidents occurred in Douglas County and Defendant Walmart Stores East, LP and Walmart Supercenter, 7001 Concourse Parkway, Douglasville, Georgia, resides or operates the subject business within Douglas County, venue is proper within the Atlanta Division.

**Parties**

4.     Plaintiff Craig Faison, is an African American, and he is entitled to the full and equal protection of the law, and he is protected from prosecution without probable cause, based on familial association, protected First Amendment activity and speech, and the right to equal treatment under law without regard to race.

5.     Plaintiff Mary Faison, is an African American, and she is entitled to the full and equal protection of the law, and she is protected from prosecution without probable cause, based on familial association, protected First Amendment activity and speech, and the right to equal treatment under law without regard to race.

6.     Plaintiff Ke'osha Avery, is an African American, and she is entitled to the

2

full and equal protection of the law, and she is protected from prosecution without probable cause, based on familial association, protected First Amendment activity and speech, and the right to equal treatment under law without regard to race.

7.    Defendant Officer Clinton Ratliff was at all times material hereto, an officer in the Douglas Police Department, and he is sued for actions and refusals to act, taken and refused to be taken, under color of law, and he and Defendant Walmart used his position and authority as a police officer to cause the deprivations complained of alone, in combination or conspiracy with one another, or as an agent of Defendant Walmart.

8.    The Defendant Walmart Stores East, LP is a publicly traded corporation, that operates within the State of Georgia under various structures and names including but not limited to: Walmart Stores East, LP and in this case it did business as and at Walmart Supercenter, 7001 Concourse Parkway, Douglasville, GA 30134. ("Walmart").

**Facts**

9.    On Black Friday, November 29, 2013, Plaintiffs Mary Faison, Craig Faison, and Craig's fiancé, Ke'osha Avery, and Omar Garrett[1] went to the Walmart

---

[1] Omar Garrett is not a plaintiff in this action, but is a Plaintiff in Northern District of Georgia, Civil Action No.: 1:18-cv-04605-SCJ, *Garrett, v. Ratliff, et al.*, however, there will be references herein to the "Plaintiffs," which, in this action, are only Mary Faison, Craig Faison, Jr., and Ke'osha Avery. It is anticipated that Counsel for Plaintiff will move to consolidate the two actions. Plaintiff consents that in Defendants' answer, they do not need to separately point out that Garrett is not a Plaintiff in this action.

Supercenter in Douglasville to shop for Christmas presents and bargains.

10.     Events had occurred before that night, that night and thereafter that led Defendant Ratliff in his individual capacity, as an agent of Walmart, or in conspiracy with Walmart, to take out false arrest warrants against each of the Plaintiffs Craig Faison, Ke'osha Avery, Mary Faison, and Omar Garrett for false report of a crime in late 2013.

11.     Defendant Ratliff swore that Plaintiffs falsely reported a theft, when Ratliff knew that Plaintiffs had not reported a theft by a deputy.

12.     Similarly, Mary Faison was arrested on 12.09.13 for false writing.

13.     On January 10, 2014, Mary Faison was arrested again, this time for "harboring a fugitive," Omar Garrett, Craig Faison, Jr., and Ke'osha Avery, in connection with the reporting of a false crime warrants, wrongfully taken out by Ratliff.

14.     On January 10, 2014, Ke'osha Avery was arrested for the Walmart warrants.

15.     On January 10, 2014, Omar Garrett was arrested.

16.     On January 16, 2014, after being released from the hospital, Craig Faison turned himself in to Douglas County.

**Agency in general**

17.     Defendant Ratliff, an Investigator with the Douglasville Police Department,

was hired by the manager of the Defendant Walmart in Douglasville because Clifton was a law enforcement officer.

18.    Defendant Walmart hired Defendant Ratliff to perform non-delegable security functions as the premise and store operator, even if Walmart were not legal title holder of the land or building.

19.    Defendant Ratliff worked directly for and was directed by managers of Walmart, including general store manager Theresa LNU.

20.    Defendant Ratliff acted in a manner to impress the Walmart management to keep the position he liked and possibly increase his pay, benefits or position he might get through management of Defendant Walmart.

21.    Defendant Ratliff did so by doing what Walmart management directed him to do.

22.    As an employee, agent, and joint operator with Defendant Walmart, Ratliff acted in a manner consistently with the interests of Walmart, which were consistent with his interests relative to Walmart, by doing what he was asked to do by Walmart managers.

23.    Other officers, from the Douglas County Sheriff's Department, the Douglasville Police Department, perhaps Marshalls or courtroom deputies, were also hired by Walmart to work Black Friday of 2013 to perform non-delegable security functions as directed by Walmart.

5

24.    These officers referenced above were also acting under color of law.

25.    Based on the events, of other officers working that night who reported developments and concerns to Defendant Ratliff, and Ratliff giving orders to other law enforcement officers that were carried out, Defendant Ratliff, had authority over the other officers who had been hired by Defendant Walmart, even if any particular officer was in another department.

26.    As a supervisory authority over other law enforcement officers hired by Walmart, he was the communication link between Walmart management and the other officers under his supervision at Defendant Walmart.

27.    Alternatively, Defendant Ratliff had managerial authority over other officers who Walmart had hired to take actions on Walmart's behalf, because he out-ranked them and they had to follow the chain of command, thereby following his orders, and the orders he had been given by Defendant Walmart.

### Race

28.    The Plaintiffs, Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett are African-American.

29.    Defendant Ratliff is White or Caucasian

**Plaintiffs being followed on orders of
Defendants Walmart and /or Ratliff or the combination and conspiracy,
and a reasonable basis for belief of racial profiling,
that makes complaints about racial discrimination protected**

30.    One of the Douglas County Sheriff's deputies working for Walmart at the

6

special that Black Friday was Michelle Austin, a White woman.

31.    When some of the Faison family were in the electronics department Douglas County Deputy Austin, started following them around, wherever they went.

32.    She was under orders, plausibly by Defendant Ratliff or another agent of Walmart, to report suspicious activity to Defendant Ratliff.

33.    The order for other officers to report to Ratliff was an order from Walmart, and/or from Ratliff individually, or a combination.

34.    Deputy Austin contacted Defendant Ratliff and indicated that she thought some members of a group or family were possibly shoplifting.

35.    Ratliff ordered Austin to follow and observe them.

36.    The group was Mary Faison, Craig Faison, and Omar Garrett who are family, and Ke'osha Avery, Craig's fiancé, all of whom are Black.

37.    The Faisons were reasonable to perceive that the White woman officer was in fact paying special attention to them, and was watching them the majority of her time.

38.    As would any reasonable person in the position of Mary, Craig, Ke'osha and Omar, they had a rational basis to believe that they were being racially profiled by Austin.

39.    A male officer similarly followed Mary and Ke'osha at another time.

40.    It is plausible other officers had been detailed to follow them by Ratliff or by

an order from Walmart relayed to the officers.

41.     In other communication from Deputy Austin to Defendant Ratliff, she told him that "they may have been trying to do refund fraud," because she had seen them going to different employees and managers about two TV's and trying to get a refund.

42.     In fact what they were doing was trying to get one of the TV's that was at a good price, there were no more on the floor, and another shopper had said she would let Mary have the TV that was already paid for and Mary could pay for it, so some paperwork had to be done by a Walmart employee, to effect that transfer.

43.     Deputy Austin also reported to the supervisor Defendant Ratliff that she thought that one of the Faison family might have put DVDs into a Walmart bag.

44.     Acting in the interest of Walmart with his supervisory authority, Defendant Ratliff ordered other Douglas County Sheriff's deputies and Douglas City Police officers, who were also being paid by Walmart to act on Walmart's behalf, to use the authority of their law enforcement office to stop the Faison family and to check that they had receipts for every item they had, before they exited Walmart store.

45.     Ratliff gave the order to search carts for items and make the Faison family produce receipts under an alleged Walmart policy

46.     After being contacted by officer Austin, Defendant Ratliff "alerted the Deputies working both exits as well as the Walmart employees," who Ratliff was

supervising, "to make sure that the group's receipts were checked against the merchandise in the buggy."

47.    Defendant Ratliff claimed to be executing Walmart "common practice" and policy, by implementing it that day whereby during the "Black Friday Sale," Walmart would check the receipts of "everyone leaving the store."

48.    This policy of checking receipts was done without viable specific fact-based probable cause or arguable probable cause to believe that there were specific items that had not been pulled or scanned at the register that were allegedly in the cart.

49.    Further, the claim that the receipt check policy applied to everyone, is false and pretextual, because the decisions to do such a search was left with the Walmart agent, Defendant Ratliff.

50.    It was Walmart policy to cover abuses of law enforcement authority by alleging that the breach of rights was only done in the name of Walmart policy.

**Lack of probable cause to search the carts
after the Faisons and Ms. Avery had just been at the cash register
and carts checked by Walmart employees who ring up charges,
and no probable cause or reasonable suspicion immediately thereafter**

51.    The Faisons and Ms. Avery had been through the process at the register of making items available for scanning so the items could be charged at the register by the Walmart cashiers, and the officers did not have probable cause to believe that anything had been stolen when Craig Faison was pushing the two carts away from the cash registers toward the door.

9

52.    The officers did not arrest Craig or anyone else before the search of the carts started, and before the officers demanded that the Faisons and Ms. Avery produce a receipt for every item in their carts.

**Faisons and Ms. Avery challenge the actions of the officers searching the carts and making them produce the receipts and begin the videoing of the officers, causing a Walmart officer to assault Ke'osha to get her stop videoing**

53.    When the Faisons and Ms. Avery began to question the officers about having to show them a receipt for everything in their carts, because the Faisons and Ms. Avery noticed that the officers had not been searching receipts of others, and because the Faisons and Ms. Avery had noticed that they had been followed throughout their time at the store, and already had begun videoing that, Mary was afraid that the officers might throw a small item in the carts for which the Faisons and Ms. Avery obviously would not have a receipt, and someone in the family would be arrested, so she asked Ke'osha to video.

54.    At first only Craig was near the carts, and he did not have the receipts for the TV's, but soon thereafter Mary produced them.

55.    When the officers demanded that all receipts be produced, Mary had demanded that they be allowed to look at the video, saying they could see that nothing had been taken.

56.    Ke'osha started videoing the interaction of the officers with members of her family, which is protected activity.

57.    Omar told a Walmart agent who had been ordered by Defendant Ratliff to search their carts for items and make them produce receipts, that the Clerk did not work for the officer, or was not an officer, he was a Walmart employee, but the Clerk said he had to follow the order of Ratliff, and he did, and the Clerk started to search the shopping carts, carrying out the order from Defendants Ratliff and or Walmart.

58.    Other shoppers also started to video, because they thought the officers were being too aggressive.

59.    Deputy Richard Tracy, of the Douglas County Sheriff's Department, was one of the officers hired by Walmart, saw Ke'osha videoing the officers.

60.    Tracy and the other security officers, and agents of Walmart, were acting under the directions of Ratliff, and were checking receipts without probable cause, where Ratliff was the law enforcement supervisor and supervising agent delegated by Walmart.

61.    Deputy Tracy, a Walmart agent assaulted Ke'osha, hitting her arm because he "felt like what she was doing was wrong."

62.    He walked over and "pushed [Ke'osha's] arm to the side to prevent her from continuing to video the event."

63.    Ke'osha objected and spoke up about it.

64.    Omar and Craig came to the aid of Ke'osha and intervened to prevent the

officer from getting more physical with Ke'osha.

65. Other shoppers were objecting to the actions of the officers and were videoing.

### Officers took the Faisons and Ms. Avery out of the store on orders of Walmart

66. One or more Walmart managers directed that the officers get the Faisons and Ms. Avery and Garrett out of the store.

### Protected activity of complaints about racism and objections about abuse by officers under color aw and about Walmart directives to make them get out of store, with formal written complaints completed in the parking lot and given to Defendant Ratliff that night

67. After the Faisons and Ms. Avery and Garrett reached the car, officers approached, including Defendant Ratliff.

68. The Faisons and Ms. Avery and Mr. Garett told the officers that they wanted to file complaints about how they had been mistreated by officers hired by Walmart, including objections about racially prejudiced treatment and abusive use of authority under color of law, relative to the officers searching for receipts and the physical contact that was unwanted and unprotected.

69. Defendant Ratliff was present and said that he and Captain Ardis could handle the criminal complaint, but any civil complaint about officer mistreatment would have to be handled by Douglas County Sheriff Major Wheeler.

70. Defendant Ratliff knew that the Faisons and Ms. Avery would be

12

complaining about mis- treatment they received after paying and being subject to search because he had ordered it under Walmart policy that gave him discretion to implement it, and that his actions in connection with his position at Walmart, and employment relationship he wanted to protect, could come under scrutiny, and cause Walmart problems, as well as causing him problems individually and in connection with his joint relationship with Walmart, and as a law enforcement officer.

71.     Mary Faison's written complaint of November 29, 2013, indicated that, "several officers surrounded me and family, slammed against a wall, and reached in my purse and someone took $500.00. After viewing my receipt and assaulting me and my family, we were thrown out of Walmart...." (IJPB015).

72.     Mary Faison has never said that she knew or saw a deputy take the $500.

73.     Defendant Ratliff did not even contact Ms. Faison to ask her what she saw, or what her complaint was.

74.     After Ratliff took out warrants against Plaintiffs and Garrett, no law enforcement officer ever contacted any of the Plaintiffs or Garrett about the mistreatment at Walmart.

75.     Garrett, Faison, Jr., and Ms. Avery each wrote statements complaining about the misconduct by the officers, supervised by Ratliff, which were hired by Walmart.

76.    Ke'osha alleged that she suffered a physical battery because an officer did not want her videoing, the search for receipts was abusive, being told to leave was abusive, and she reiterated her mother's concern about her mother losing $500.

77.    In her statement of November 29, 2013, Ke'osha said, "...my mom left the buggie around the other officers...[and]...there were 500.00 missing out of her purse..." (IJPB0018).

78.    Ke'osha did not indicate that she had seen who did this or that she knew anything more than Defendant Ratliff knew, that deputies and officers were present when the money was lost according to Ms. Faison.

79.    Craig Faison complained about physical battery by officers, being ordered to leave and not return, about the searching of the carts without probable cause, about $500 being taken from his mother, and being followed by officers during the duration of the time at Walmart.

80.    Craig Faison, Jr. indicated in his statement of November 29, 2013, that, "During all of this, there was a monetary theft of 500 $ [sic] taken from my mother, Mary Faison's purse, which was left unattended due to the physical contact from the Sheriffs officers." (IJPB024)..

81.    Craig did not indicate that he had seen who did this or that he knew anything more than Defendant Ratliff knew, that deputies and officers were present when the money was lost according to Ms. Faison

82.   Omar Garrett's statement of November 29, 2013, objected to the searching for receipts, that they were told to leave, and that officers were very aggressive.

83.   Omar's statement mentioned nothing about Mary Faison believing she was missing $500.

84.   Mary, Ke'osha and Craig, do not directly state that a deputy, let alone a particular deputy, had taken the money, nor that they had seen any other person take the money.

85.   Omar Garrett's statement objected to the treatment by the officers, but did not even say anything about the loss of or theft of $500.

86.   As of the night of the incident, Defendant Ratliff knew, in all of the alternative capacities, that none of the statements said a deputy was seen taking money.

**Collusion with Walmart agents and Ratliff
using law enforcement power for Walmart's benefit,
by using the criminal process against Garrett
in anticipation of possible civil litigation,
without probable that Garrett made a false statement**

87.   A short time after getting the statements from the Faisons and Ms. Avery, Defendant Ratliff went back in the store and talked to Walmart Loss Perversion Manager, Jill Bynum.

88.   They discussed the complaints just made by the Faisons, Ms. Avery, and

Garrett, about how they had been mistreated by Walmart agents, including Defendant Ratliff himself.

89.   In discussion on December 3, 2013, the Walmart Loss Prevention Manager, Jill Bynum, told Ratliff that the "Faison's" [sic] had filed complaints and claims against Walmart in the past, and had been awarded money and merchandise by the corporate office for those complaints." (IJPB0009).

90.   Bynum continued to say that, "she believed that they would again complain to the corporate office in hopes of getting money for the stolen $500.00 claim." (IJPB0009).

91.   Because of Plaintiffs' previous claims against Walmart, and because of Bynum's fear of future claims against the Walmart she managed, which might adversely impact her career, Theresa LNU, Walmart general store manager, requested Ratliff to issue Plaintiffs Criminal Trespass Warnings, which would subject Plaintiffs to arrest if they return to Walmart, placing one more barrier in front of Plaintiffs continued existence in Douglas County, with the intent of driving them out of the County, through formal or informal means.

92.   Ms. Bynum, Walmart Loss Prevention manager, and Theresa LNU, Walmart Store Manager, played a substantial role in making decisions about who Walmart would retain and who they would hire to perform the duties Walmart had Ratliff performing, and Ratliff knew this.

93.    Defendant Ratliff wanted to take action that protected Walmart because that would protect him in his several capacities.

94.    By then Ratliff had been promoted to an Investigator with the City of Douglas, and had caused the prosecution of many cases.

95.    Defendant Ratliff knew that if he made a charge sufficient to get a judge to issue an arrest warrant, even if he knew a reasonable officer would not make out the charge, that the local Solicitor's office and DA's office would press forward with the charge until they got a plea, which would protect Walmart, and him, from civil suit.

96.    Ratliff knew that the charge was false, and intentionally sought to gain some cover by stating in reports that he had decided to charge because of the "totality of the circumstances."

97.    Defendant Ratliff foreseeably knew that there was a high degree of probability that if the initial charges were a felony, that a charged defendant, and in this case, one of the Plaintiffs, or Garret, would eventually plead guilty to a misdemeanor because the DA's office would persist in pursuing the overcharged, or false felony, and the defendant, in this case the Plaintiffs or Garrett, under threat, stress, and duress of possible felony punishment, accept a guilty plea, and he and Walmart would be covered against any civil suit, arising from the initial mistreatment, and for the false arrest and malicious prosecution.

98.   It is plausible that discovery will lead to evidence about a pattern of false, or inflated charges, and over- charging to include felonies, under conditions of plausible denial, in order to let the prosecution, plea and defense system provide cover for future civil liability based on misconduct of officers attendant to the initial confrontation or arrest.

99.   Longtime officer and now Investigator Ratliff realized that when he started the arrest and prosecution process it could be used as a pre-emptive strike and offense against civil complaints and internal affairs complaints by those citizens making complaints about an officer's conduct.

**Prior claim was about Mr. Faison being assaulted and robbed in the Walmart by an employee who had been fired before the attack**

100.   The prior claim against Walmart was by Mr. Faison, Sr., that derived from an assault by a person who may or may not have been a Walmart employee, on this Walmart's premises.

101.   The man had taken Mr. Faison's wallet, with about $250 in it.

102.   No Walmart security person intervened, and as the attacked continued, Walmart prevent Craig Faison, Jr., and Omar Garrett from helping Faison, Sr.

103.   Walmart paid Mr. Faison about $250 for the loss of his money.

104.   The man who assaulted Mr. Faison was prosecuted.

## Count I

**Federal Malicious Prosecution in violation of the Fourth Amendment's requirement that arrest, and prosecution be based on objective evidence a person has probably committed the crime charged, without the need to show a prohibited malice or reason, or personal malice**

105.   Plaintiff incorporates each and every paragraph above as if fully stated herein.

**The Walmart request and use of Walmart agent and co-conspirator Ratliff to perform functions of control about the Walmart premise, under color of law, with threat of arrest to the Plaintiffs using Ratliff to issue Criminal Trespass Warnings, and the message sent to Ratliff to have them all arrested and prosecuted, to provide leverage against any civil claim, in violation of rights guaranteed all**

106.   On December 2, 2013, the Walmart General Store Manager, Theresa LNU, whose name is not on the list of witnesses in the investigative report, met with Ratliff about the potential complaints by the Plaintiffs.

107.   In this meeting on December 2, 2013, Walmart, through the General Store Manager Theresa asked Defendant Ratliff to be their representative, and use his authority to protect them as a joint entity in their collusion and conspiracy, or as their agent, from events that might generate inquiry by one or more complaints.

108.   The General Store Manager for Walmart Supercenter, Theresa, asked Defendant Ratliff "to be a representative of Walmart and issue Mary Faison, Craig Faison, Jr., Omar Garrett and Ke'osha Avery permanent Criminal Trespass Warnings" for the Walmart stores in Douglasville and Lithia Springs. (IJPB0009).

109.   Defendant Ratliff said he would get the CTWs served as soon as he could get them all in one place.

110.   Ratliff understood the message to use his police authority to protect himself and Walmart and did so by taking out the warrants for false writing, without probable cause.

111.   The General Store Manager would have influence over Defendant Ratliff being able to keep his position with Walmart.

112.   The Walmart Store Manager knew that their agent Ratliff would do what she asked, under color of law, even if not necessarily within the law, to protect or help Walmart, which in turn would help him, by altogether preventing a civil action, and give them leverage if a civil action were to be pursued by the Plaintiff and Garrett.

113.   This is why, in early Summer 2014, Walmart General Store Manager Theresa LNU contacted Ratliff again, and demanded that he serve the Criminal Trespass Warnings on Plaintiffs and Garrett, asking him why haven't they been served yet.

114.   Ratliff served Plaintiffs and Garrett with the Criminal Trespass Warnings in early Summer 2014.

115.   To further the conspiracy to use law enforcement power through the criminal process to gain an advantage in a possible civil matter, Defendant Ratliff charged Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery with making a

false report of a crime, a felony.

116.   Defendant Ratliff charged Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett, with making a false statement, and Ratliff knew that charge was false.

117.   "Due the totality of the circumstances, [Ratliff] prepared and had warrants signed on each," Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett, for false report of a crime. (IJPB0009)

118.   Omar was arrested in January 10, 2014, and the prosecution continued until September 29, 2016, when the charge was dropped.

119.   Mary Faison was arrested 12.09.13, Craig Faison, Jr., after he got out of the hospital, turned himself in on 01.14.14, and Ke'osha was arrested 01.10.14, and nolle prosequi orders for each were entered on February 16, 2017.

120.   During their prosecutions, Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett suffered great stress due to willful and wanton acts of deliberate indifference and in disregard of the rights of all, caused by Defendants Ratliff and Walmart, jointly and severally.

121.   The Criminal Trespass Warnings were caused to be issued by Walmart's agent Defendant Ratliff.

122.   The prosecution caused Mary Faison, Craig Faison, Jr., Omar Garrett,

and Ke'osha Avery, to suffer past and present mental anguish and stress, and it is reasonably foreseeable that they will continue to suffer anguish and stress.

123.   The Defendants, individually or jointly, acted in willful, and wanton disregard of the law, for which exemplary or punitive damages are sought.

124.   According to Ratliff's affidavit for the Garrett warrant, "Said accused did knowingly and willfully give a false report of theft of money and battery to a law enforcement officer, to wit Detective Clinton Ratliff," dated December 5, 2013, Case No.: 13-014165.

125.   Ratliff similarly swore out false warrants alleging that Mary Faison, Craig Faison, Jr., and Ke'osha Avery "falsely reported a theft of money."

126.   The 04.02.15 indictment in Douglas County Superior Court, Case Number 15-CR-00352, states that each, Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery, "did unlawfully, knowingly, and willfully make a false statement ... that a Douglas County Sheriff's deputy had stolen money from a citizen..." in violation of a O.C.G.A. § 16-10-20.

127.   O.C.G.A. § 16-10-20 makes it a crime to knowingly make a false statement in any official matter.

128.   The first listed witness in the indictment is Clint Ratliff who, upon information and belief, provided false, and corrupt, misleading information indicating that Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar

Garrett made a false statement on November 29, 2013, in their First Amendment protected complaint about misconduct of officers, under supervision of Ratliff, on behalf of Walmart.

129. Ratliff, on behalf of, or in conspiracy with Walmart, initiated criminal proceedings against Plaintiffs Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett, by taking out false warrants, and causing them to be arrested, and then prosecuted, by idly standing by, and never revealing the truth, and playing the foreseeable result of the criminal prosecution system in Douglas County at that time.

130. Operating under color of law, Defendant Ratliff, individually alone, alternatively as an agent of Walmart, alternatively in conspiracy with Defendant Walmart, swore out a warrant to arrest Plaintiffs and Garrett for False Report of crime, a felony, expecting a judge would issue the warrant and the District Attorney or Solicitor's office would carry out the prosecution.

131. The arrest and prosecution for False Report of Crime were instigated without probable cause, without objective evidence that Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett had falsely reported a crime.

132. Ratliff knew, because he had Garett's statement and had read it, that it did not mention a theft of money or an allegation of crime that was false.

133. Ratliff knew, because he had and read statements of Mary Faison, Craig

23

Faison, Jr., Ke'osha Avery, that they did not say that a deputy had taken money, only that deputies were around when Mary found money missing.

134.   The charges were pursued without an objective basis to believe that Garrett had committed the crim of falsely reporting crime.

135.   A judge issued arrest warrants for Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett, based on Ratliff's affidavits, falsely alleging Plaintiffs had falsified reports of theft of money.

136.   Based on false warrants from Ratliff, all four were arrested, and the prosecution initiated: Mary Faison, on 12.19.13; Ke'osha Avery and Omar Garrett on 01.10.14; and, Craig Faison, Jr. on 01.16.14, after he was release from the hospital.

137.   Each Plaintiff, and Garrett, had to post bond.

138.   Thereafter, the false charges were prosecuted against each, and each had to answer and appear before an inquiring court, appear at nearly monthly calendar calls, and repeatedly be ready for trial, over a period of about a year and one half.

139.   Each had to hire a lawyer, and pay fees for the lawyer, the amounts which will be more specifically demonstrated at trial.

140.   Defendants Walmart and Ratliff acted maliciously, or for a purpose other than bringing the Plaintiffs to legitimate justice, by pursuing the false charge against each Plaintiff and Garrett, to further aid the conspiracy of Walmart, to

prevent and undermine a legitimate civil action against Walmart for the mistreatment of the Plaintiffs on Black Friday 2013, and to protect Ratliff's own interests to protect his arrangement with Walmart as a supervisor of law enforcement officers at Walmart, for his own personal gain.

141. The arrest and prosecution were without legitimate evidence of probable cause and violated the Fourth Amendment.

142. The arrest and prosecution were carried out with legal malice, in that each was without an objective basis for a reasonable officer to believe that Garrett had committed false report of a crime.

143. The arrest and prosecution were carried under legal process, of a warrant, indictment or accusation.

144. The prosecution terminated favorably for Plaintiff Craig Faison on February 16, 2017, by entry date of nolle prosequi.

145. The prosecution terminated favorably for Plaintiff Mary Faison on February 16, 2017, by entry date of nolle prosequi.

146. The prosecution terminated favorably for Plaintiff Ke'osha Avery on February 16, 2017, by entry date of nolle prosequi.

147. The prosecution has caused and will continue to cause Plaintiffs to suffer mental anguish.

148. Plaintiffs had to undergo the stress of awaiting a chance to clear

themselves of the pending false charges.

149.   Plaintiffs had to undergo the threat and stress of serving felony time if wrongly convicted.

150.   Count I is based on Fourth Amendment reasonable objective tests about lack of probable cause without the need to show an independent personal motive or malice, where the prosecution carried out without probable cause deprived Plaintiffs of a Fourth Amendment right.

### Count II

### Federal malicious prosecution claim with evidence of malice in violation of other protected rights.

151.   The Plaintiffs incorporates each and every paragraph in Count I as if fully stated herein.

152.   Count II is based on a deprivation of the Fourth Amendment right not to be prosecuted except upon the existence of legitimate probable cause, as is stated in Count I, plus an assertion of one more of the following unlawful motives, comprising malice, and evidence of willful and wanton conduct, supporting a finding of a deprivation of the both the Fourth and Fourteenth amendments, and punitive damages for the deliberate indifference to the rights of all, as to the willful mistreatment of Plaintiffs Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery, in violation of the law by the abuse of the criminal process.

**First Amendment Retaliation for Complaints Made that Night**

153. Defendants pursued the prosecution with malice and in retaliation for the complaints lodged against the officers Ratliff supervised for Walmart on November 29, 2013, by Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery, asserting abusive treatment by officers who were acting on direction of Defendant Ratliff where his actions were as an agent of Walmart, or in conspiracy with Walmart, in violation of the First Amendment.

154. Managing agents of Defendants Walmart and Ratliff had conversations that night, and within the next week, indicating that Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery and the others would cause problems for Walmart and Walmart's Loss Prevention Manager and Defendant Ratliff if the complaints they thought were likely were pursued formally or informally.

155. The Walmart General Store Manager Theresa, the Loss Prevention Manager Bynum, and Ratliff each had motives on behalf of themselves, and Walmart, to use the criminal process to chill complaints to prevent exposure of misconduct by Walmart, and mistakes they had made.

156. Similarly, the General Store Manager, Theresa, had a personal motive in maintaining her position without exposure of her managerial wrongdoing, and wanted to use Ratliff to abuse the criminal process to prevent complaints and investigations, and sent that message by asking Ratliff, a Walmart employee or

27

agent hired to do Walmart's law enforcement bidding, to take out the Criminal Trespass Warning against Plaintiff and the others.

157.   Similarly, the Loss Prevention Manager Bynum, had a personal motive in maintaining her position without exposure of her managerial wrongdoing, and wanted to use Ratliff to abuse the criminal process to prevent complaints and investigations, and sent that message by asking Ratliff, a Walmart employee or agent hired to do Walmart's law enforcement bidding, to take out the Criminal Trespass Warning against Plaintiff and the others.

158.   The arrest and prosecution for a false felony would chill a reasonable person of normal sensitivity from making a complaint about their treatment at the hands of the law enforcement officers working for Walmart.

159.   The prosecution of Plaintiffs and Garrett chilled rights protected by the First Amendment.

**Prosecution in Anticipatory Retaliation of Future Complaints and Other Access to Public Forum and Courts to Air Grievances About Police misconduct, done in the name of Defendants Ratliff and Walmart, in deprivation of First and Fourteenth Amendment Right to Chill and Prevent Access to Courts.**

160.   Defendant Ratliff and the Defendant Walmart Loss Prevention Manager Bynum were concerned about future claims, formal and informal, that could be brought by Garrett and the others.

161.   The Defendants conspired to engage the criminal arrest and prosecution

process in order to chill and prevent filings or pursuit of civil complains, or to prevent them altogether, by prosecuting to obtain a wrongful conviction, in violation of the Fourth and Fourteenth amendments.

162. The Defendants individually, jointly or in conspiracy, or through Walmart's agent Ratliff, pursued the prosecution to chill and otherwise deprive Plaintiffs of First Amendment rights to access to court or to make other complaints about the police in the future by the prior restraint of a malicious prosecution based on false evidence.

### Race-based Prosecution

163. Race-based malice was a substantial factor in the continuation of the malicious prosecution of Plaintiffs and Garrett, in violation of the Thirteenth and Fourteenth Amendments.

164. Based on race, agents of Walmart profiled Plaintiffs and Garrett, and linked them all on account of their race.

165. Defendant Ratliff, individually, as an agent of Walmart, or in conspiracy with Walmart, had Plaintiffs and Garrett, and searched for receipts, when Whites, as to whom officers had some level of suspicion, were not being similarly followed, or searched.

166. Defendant Ratliff and Walmart were aware of complaints by Plaintiffs and Garrett about race being a motivating factor for the unfair and abusive

treatment on Black Friday, even before the formal statements were taken.

167.   The Walmart Loss Prevention Manager linked Mary Faison, Craig Faison, Jr., Omar Garrett, and Ke'osha Avery to the prior claim against Walmart in her communication to Defendant Ratliff, about the assault of Mr. Craig Faison, Sr., involving a person who may or may not have been a Walmart employee at the time on Walmart property without security intervention, as "they" had "complaints" about mistreatment and "they" would complain about the loss of $500 as if it were a group loss, when the loss was of Mary's money, where race was a substantial factor in that lumping them all together.

168.   The Walmart Loss Prevention manager sent the signal to Ratliff that he had to go after all of them, regardless of their innocence, with a criminal prosecution, where race was a substantial factor, in violation of the Thirteenth and Fourteenth Amendments.

## Count III

**Deprivation of the right of familial association under the First Amendment, and in this case also the Thirteenth amendment, to be free from arrest and prosecution without objective evidence of probable cause, on account of a familial association, protected by the First Amendment**

169.   Plaintiffs incorporates each and every paragraph in Count II as if stated herein.

170.   Ms. Daniels, Garrett's criminal attorney, was told by the assistant DA Kegley, over whom Defendant Ratliff and therefore the interest of Walmart had

sway, that they would not drop charges against Garett, until Mary Faison his mother pled guilty or was convicted, even though the objective evidence shows that no reasonable person would believe that Omar committed the offense of falsely reporting a crime.

171.   Upon information and belief, the desires of Walmart were independently conveyed by Defendant Ratliff individually or as an agent of Walmart, or in conspiracy with Walmart, who plausibly told the DA's office that he and or Walmart wanted the prosecution to continue as against Garrett, Faison, Jr., and Avery, until Mary Faison, either pled guilty, was convicted, or moved out of Douglas County.

172.   The DA's office followed the request of law enforcement for a prolonged period, and Walmart had a relationship with law enforcement, and knew that the DA's office would pursue charges if law enforcement wanted them pursued, without regard for probable cause.

173.   The arrests and prosecutions in this case were in breach of the Plaintiffs' right to associate with family without being subjected to prosecution without probable cause, in violation of the First, Fourth and Fourteenth amendments, and also the right to associate without regard to race, under the Thirteenth amendment.

174.   Ms. Daniels, an attorney hired to represent Mr. Garett, was told repeatedly by an assistant DA, that the felony prosecution against Garrett, Faison, Jr., and Avery,

would continue until the prosecution of Mary Faison resulted in a conviction, plea, or she moved out of Douglas County.

175.    Ke'osha Avery sues under her First Amendment right to associate with the persons of her choice, without regard to color or race being a factor in denial of due process or equal protection.

176.    Ke'osha Avery, and Craig Faison, Jr., are in love, and hope to become married.

177.    Upon a reasonable and plausible belief, Detective Ratliff has sway with prosecutors, a fact which he knew, and on behalf of himself, and as an agent of Walmart, or in conspiracy with Walmart expressly told prosecutors that he desired that Garrett be prosecuted until it was sure that Mary Faison was found guilty or plead, and that a substantial motivation of maintaining the prosecution was the connection by race, in violation of the First, Fourth, Thirteenth and Fourteenth Amendments.

## Count IV

### Claim under 42 U.S.C. § 1981,
### for Violation of Right to Contract based on Race

178.    Plaintiffs incorporates each and every paragraph above as if fully stated herein.

179.    Based on a reasonable belief that a claim for deprivation of the right to

contract and all activity precatory to execution of contract, without regard to race, is violated by the chilling of that right through a malicious prosecution and its continuation, where the claim actionable under 42 U.S.C. § 1981 accrues on the favorable termination of a prosecution initiated to chill the right to contract based on race.

180.   Mary Faison, Craig Faison, Jr., Ke'osha Avery, and Omar Garrett are all African-American.

181.   At the direction of Defendants Walmart and Ratliff, officers were instructed to pay special attention to Plaintiffs and Garrett but were not instructed to watch similarly situated Whites.

182.   Defendants did not similarly profile, follow, search without probable cause, nor request proof of purchases from White customers.

183.   Defendants would not have become physical with White customers as quickly, nor as severely; would not have charged a White customer who similarly complained about mistreatment; would not have had criminal trespass warnings against White customers under similar circumstances.

### Count V

**Malicious Abuse of Process under § 1983 for deprivation of liberty interest, to be free from prosecution used for ulterior motive to silence complaints about police misconduct, to pressure other family members to plead guilty, and to interfere with the right to live in a location of one's choosing, equally protected by the law.**

184.   Plaintiffs incorporates each and every paragraph above as if fully stated herein.

185.   Plaintiffs especially incorporates Counts I through IV.

186.   Defendants Walmart and Ratliff maliciously abused process of prosecution for false statements of a crime.

187.   Defendants Walmart and Ratliff abused the prosecution for the false statements of crime to silence complaints of Plaintiffs and Garrett about the treatment on Black Friday 2013, in violation of the liberty interest of the right to complain about the protection of bodily integrity under the First and Fourteenth Amendments, and the right to complain about Fourth Amendment violations.

188.   Defendants Walmart and Ratliff abused the prosecution for the false statements of crime to pressure other family members to plead guilty, in violation of the liberty interest to freely associate with family members under the First and Fourteenth Amendments, without undue and arbitrary interference through the use of state prosecution, not intended for that purpose.

189.   Defendants Walmart and Ratliff abused the prosecution for the false statements of crime in violation of the First and Fourteenth Amendments, interfering with the right to live in a location of one's choosing, to travel, to

34

complain about government abuse, and to fully defend oneself against charges, in denial of due process and equal protection of the law.

## Count VI

**State claim for malicious prosecution. See O.C.G.A. § 51-7-40, et seq**

190.   Plaintiff incorporates each and every paragraph above as if fully stated herein.

191.   The Plaintiff specifically incorporates the allegations of malice in Count II above, to support the element of malice in this state claim.

192.   Additionally personal motive supports findings of malice, in that Defendants Ratliff, the Loss Prevention Manager Bynum, and the Walmart General Store Manager, Theresa, used and abused the criminal process to gain advantage in civil proceedings, to prevent and deter inquiry into their performance that might have resulted in their termination or own adverse treatment.

193.   Plaintiffs were arrested in December 2013 (Mary), and January 2014 (Craig, Jr., Ke'osha, and Omar), based on a late 2013 warrant for false report of a crime taken out by Defendant Ratliff in his individual capacity, alternatively as an agent of Walmart or in conspiracy with Walmart.

194.   The warrant and indictment was without probable cause as Plaintiffs did not falsely report a crime, and Ratliff knew that, but he took it out any way to protect Walmart and himself from possible civil action by Plaintiffs and for the other

35

reasons stated in Count II and III.

195.  The prosecution caused Plaintiffs to suffer past and present mental anguish and stress, and it is reasonably foreseeable that he will continue to suffer anguish and stress, caused by the abuse of state power to which they were subjected by Defendants' willful and wonton conduct, for which exemplary damages is sought.

196.  Plaintiffs suffered damage to their reputations, which has caused them mental anguish, and will continue to cause them mental anguish.

197.  The prosecution ended in favor of Omar Garrett on September 29, 2016, and 02.16.14 for Mary Faison, Craig Faison, Jr., and Ke'osha Avery.

WHEREFORE, Plaintiffs pray judgment against one or more Defendants, individually or jointly for the following:

a.   Compensatory damages as allowed by law;

b.   Special damages including for attorney's fees, and medical bills as more particularly shown at trial;

c.   Damages for injuries caused by deprivation of Constitutional rights under the United States Constitution;

d.   Punitive damages against each Defendant, that is Ratliff and Walmart, for their deliberate indifference, willful and reckless disregard for the rights of all and under federal and state law.

e.   Reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. §

1988;

f.      Any other and further relief so ordered.

        A JURY TRIAL IS HEREBY REQUESTED.

        This the 15th day of February, 2019.

                                        /s/ John P. Batson
                                        John P. Batson
                                        Ga. Bar No. 042150
                                        Attorney for Plaintiff
                                        P.O. Box 3248
                                        Augusta, GA 30914
                                        706-737-4040
                                        FAX 706-7363391
                                        jpbatson@aol.com

Prepared by:

John P. Batson
P.O. Box 3248
Augusta, GA 30914
706-737-4040